## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHESTER C. CHIANESE DDS LLC : | | |
| PLAINTIFF, : | CIVIL ACTION NO. | |
| V. : | | |
| : | | |
| TRAVELERS CASUALTY INSURANCE : | | |
| COMPANY OF AMERICA : | COMPLAINT | |
| DEFENDANT. : | JURY TRIAL DEMANDED | |

Plaintiff, Chester C. Chianese DDS LLC, by way of Complaint, brings this action against Defendant, Travelers Casualty Insurance Company of America, and alleges as follows:

### NATURE OF THE CASE

1. This is a civil action seeking to declare Travelers' denial of coverage violates New Jersey public policy and constitutes a breach of contract.

2. In March 2020, state and local authorities and dental associations issued orders mandating Plaintiff to close its business in response to the Coronavirus pandemic.

3. Plaintiff had in place commercial insurance issued by Travelers Casualty Insurance Company of America, and expected it would cover, among other damages, business income losses from closure by a civil authority.

4. Defendant, on March 30, 2020, denied Plaintiff's claim for business income /civil authority coverage.

5. As a result, Plaintiff brings this action for declaratory and other relief.

### THE PARTIES

6. At all relevant times, Chester C. Chianese DDS LLC (hereinafter "Plaintiff" and/or "Chianese"), a New Jersey company, maintained a dental office at 224 Washington Street, Toms River, New Jersey 08753.

7. At all relevant times, Defendant, Travelers Casualty Insurance Company of America (hereinafter "Defendant" and/or "Travelers"), a Connecticut corporation, maintained a principal place of business at One Tower Square, Hartford, Connecticut 06183.

8. At all relevant times, Travelers regularly conducted business in the State of New Jersey.

## JURISDICTION

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between Plaintiff and Defendant and the amount in controversy is greater than $75,000.

10. Plaintiff is a citizen of New Jersey

11. Defendant is a citizen of Connecticut.

12. This Court has personal jurisdiction over Defendant because at all relevant times Defendant engaged in substantial business activities in the State of New Jersey, and Defendant derived substantial revenue from such business in New Jersey

13. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the acts which gave rise to this lawsuit occurred in this district. Venue is also proper pursuant to 28 U.S.C. §1391(b)(3) because Defendant is subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

A. INSURANCE COVERAGE

14. Most businesses purchase all-risk commercial insurance to protect against catastrophic events such as the current pandemic and non-essential business closures mandated by Civil Authority Orders.

15. Coverage for such events is known as "business interruption coverage" and is standard in most all-risk commercial property insurance policies.

16. On or about July 7, 2019, Chianese purchased insurance from Travelers, policy number 680-8J185275-19-42, expecting to be insured against losses, including, but not limited to, business income losses at its dental practice located at 224 Washington Avenue, Toms River, New Jersey. The policy is attached as <u>Exhibit 1</u>.

17. Chianese purchased, among other coverages, business interruption coverage for closure by Order of Civil Authority.

18. Chianese's Travelers Policy included standard forms used by Travelers for all insureds having applicable coverage.

19. Chianese did not participate in the drafting or negotiating of its Travelers Policy.

20. Chianese possessed no leverage or bargaining power to alter or negotiate the terms of the Travelers Policy.

21. Certain exclusions in the policy that contradict the civil authority coverage are not enforceable as they violate New Jersey public policy as contracts of adhesion.

22. The Travelers Policy is an "all-risks" policy which provides coverage for the Insured Premises unless specifically excluded.

23. The Travelers Policy provided that the insurance coverage applied to the actual loss of business income sustained and the actual expenses incurred when access to the Insured Premises is prohibited by order of civil authority as the result of a covered cause of loss to property in the area of Plaintiff's Insured Premises. This coverage is identified as "Civil Authority." <u>Ex. 1</u>, (Section A7(g), p. 15).

24. The reasonable expectation of the insured, Chianese, was that the business interruption coverage included coverage when a civil authority forced closure of the business for an issue of public safety in the immediate area surrounding the insured premises.

25. The Travelers Policy does not exclude the losses suffered by Plaintiff, Chianese, and thereby the Policy does provide coverage for the losses incurred by Plaintiff.

26. Defendant, by letter dated March 30, 2020, denied Plaintiff's claim for business losses as follows:

> "You presented a claim for loss of income due to the Coronavirus (COVID-19) outbreak. You advised that as of 3/18/20, the Governor of New Jersey ordered that your business and others be closed to prevent the spread of the COVID-19 virus. There is no report of any physical damage to your premises or your business property….
>
> Because there was no direct physical loss or damage at the described premises, 224 Washington Street, Toms River, NJ 08753, this Business Income and Extra Expense coverage does not apply to your loss.…
>
> Your policy also contains Civil Authority coverage. This coverage is set forth on pages 15-16 of the Businessowners Property Coverage Special Form (Form No. MP T1 02 02 05)….
>
> We confirmed that a civil authority prohibited access to the described premises….The civil authority order that is affecting your business was not issued due to a direct physical loss of or damage to property. Rather, the order was issued to slow the spread of COVID-19.…the order was not due to loss or damage to off-premises property.
>
> Therefore, because all of the requirements that are necessary for Civil Authority coverage are not present in your claim, this coverage does not apply.
>
> Even if there had been qualifying direct physical loss or damage at the described premises or a qualifying location for Civil Authority coverage, such loss or damage would have been caused by an excluded peril.
>
> …because the policy excludes loss or damage caused by or resulting from any virus, which includes the COVID-19 virus, your business income loss is not covered."

The full denial letter is attached as Exhibit 2.

27. Loss of use of property, as here, constitutes physical loss or damage.

4

28. Plaintiff suffered direct physical loss or damage within the definition of the Policy.

29. The virus and bacterium exclusion does not apply because Plaintiff's losses were not directly caused by a virus, bacterium or other microorganism.

30. Instead, Plaintiff's losses were caused by the civil authority orders issued by Governor Murphy, the New Jersey State Board of Dentistry and other government agencies to mitigate the spread of COVID-19 in the future.

### B. CORONAVIRUS PANDEMIC

31. COVID-19 is a physical substance.

32. COVID-19 is a highly contagious airborne virus which rapidly spread across the world, including the United States.

33. COVID-19 was declared a global pandemic by the World Health Organization on March 11, 2020.

34. On March 11, 2020, the President of the United States declared a national emergency.

35. COVID-19 is a public health crisis that profoundly affected all aspects of society, including the ability of the public to congregate and gather.

36. The Center for Disease Control, on March 16, 2020, issued guidance that gatherings of more than ten (10) people should not occur due to increased risk of contracting the virus.

37. COVID-19 can, and does live, on physical surfaces outside of the human body.

38.     The COVID-19 virus remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel.[1]

## C. CIVIL AUTHORITY ORDERS

39.     On March 9, 2020, Governor Murphy issued Executive Order No. 103, declaring a State of Emergency in New Jersey as a result of COVID-19.  Order 103 attached as Exhibit 3.

40.     Governor Murphy declared: "It shall be the duty of every person or entity in this State or doing business in this State … to cooperate fully with the State Director of Emergency Management and the Commissioner of DOH in all matters concerning this state of emergency." Ex. 3.

41.     On March 16, 2020, Govern Murphy issued Executive Order No. 104, declaring it "necessary to limit the unnecessary movement of individuals in and around their communities and person-to-person interactions."  Order 104 attached as Exhibit 4.

42.     On March 21, 2020, Governor Murphy issued a "stay at home" order, ordering all New Jersey residents to stay at home except for necessary travel.  He ordered that all non-essential businesses close until further notice.  Order107 attached as Exhibit 5.

43.     On March 21, 2020, The New Jersey office of the Attorney General and New Jersey State Board of Dentistry issued an advisory that dentist should cancel or postpone any elective, non-essential, or routine service until at least April 20, 2020, to limit exposure to and transmission of the virus and help preserve and extend the supply of personal protective equipment. Order attached as Exhibit 6.

---

[1] *See*, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces;  *See also*, who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations.

6

44. On March 23, 2020, Governor Murphy ordered the suspension of all elective surgeries and/or invasive procedures, whether medical or dental, and encompassing Plaintiff's practice. Order 109 attached as Exhibit 7.

45. On April 15, 2020, the New Jersey State Board of Dentistry indicated that "dentists are not permitted to resume "elective" surgeries and invasive procedures for adult patients until further notice…" Order attached as Exhibit 8.

46. The indefinite cancellation or postponement mandated in the March 23rd Executive Order 109 has not been relaxed.

47. As of May 5, 2020, there were over 130,000 positive cases of COVID-19 in New Jersey, with at least 8,244 of those cases having resulted in death. There were positive cases of COVID-19 in every county in New Jersey, and there have been deaths relating to COVID-19 in every county in New Jersey. Order 138 attached as Exhibit 9.

48. On May 6, 2020, Governor Murphy ordered that the emergency measures the State had taken to address COVID-19 must continue, and the prior Executive Orders would remain in full force and effect. Ex. 9.

49. "[T]he spread of COVID-19 in New Jersey constitutes an ongoing public health hazard that threatens and presently endangers the health, safety, and welfare of the residents of one or more municipalities or counties of the State, and it is necessary and appropriate to take action against this public health hazard to protect and maintain the health, safety, and welfare of New Jersey residents..." Ex. 9.

50. These Orders, as they related to the closure of all "non-essential businesses" and the suspension of medical and dental procedures, evidence awareness on the part of both state and

local governments that COVID-19 causes damage vis-à-vis contamination to property. This is particularly true in dental practices.

### E. IMPACT ON CHESTER C. CHIANESE DDS LLC

51. As a result of these Orders, Plaintiff closed its dental practice on March 18, 2020, and Plaintiff's business remains closed.

52. As a dental practice, Plaintiff operates in a close environment where patients, staff and doctors are directly next to each other, and are using tools, instruments and surfaces which must be free from contaminants.

53. Dental procedures produce saliva particles which aerosolize, meaning they can become fine and hang in the air for extended periods of time.

54. Plaintiff's practice is highly susceptible to contamination and damage.

55. Plaintiff's practice is highly susceptible to rapid person-to-person and person-to-property contamination as the virus is carried into the premises from the surrounding area and other contaminated, damaged premises.

56. Given the nature of Plaintiff's business, Plaintiff and its Insured Premises were physically impacted by the probability of COVID19 contamination and Civil Authority mitigation efforts.

57. As a result of the civil authority orders, Chianese suffered business income, civil authority and other related losses which are covered by the Travelers Policy.

58. Plaintiff specifically sought and paid premiums to Travelers for coverage to ensure the survival of the business due to the business closure ordered by the civil authority.

59. It was Plaintiff's reasonable expectation that if civil authorities forced closure of Plaintiff's business, the loss of income from such civil authority action would be covered under the policy.

60. As a result of the orders, Plaintiff incurred, and continues to incur, a substantial loss of business income and additional expenses covered under the Travelers Policy.

## COUNT I
### DECLARATORY RELIEF

61. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

62. Pursuant to 28 U.S.C. §2201, a court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

63. Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

64. Plaintiff requests a Declaratory Judgment to affirm that the Travelers Policy provides business income coverage because of losses attributable to civil authority actions, and because the denial violates public policy.

65. Plaintiff requests a Declaratory Judgment that Travelers's Exclusion of Loss Due to Virus or Bacteria does not apply to the business income losses incurred by Plaintiff.

66. Plaintiff requests a Declaratory Judgment that Travelers's denial of coverage for losses caused by the referenced civil authority orders is a violation of public policy.

67. An actual controversy exists between Plaintiff and the Defendant because Travelers denied Plaintiff's business loss and business income and civil authority claims.

68. Plaintiff's interest in the Travelers Policy and declaratory relief is direct, substantial, quantifiable, and immediate.

69. Declaratory Judgement is appropriate in the manner requested herein by Plaintiff.

## COUNT II
### BREACH OF CONTRACT - COMPENSATORY RELIEF

70. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

71. At all times relevant hereto, Chianese was an insured under the Travelers Policy.

72. Chianese purchased, elected and paid premiums to Defendant for the property, business income and extra expense, civil authority and additional coverages applicable to the losses claimed in this action between the period of August 11, 2019 and August 11, 2020.

73. All the information regarding the insured's business and risks thereof was known to the Defendant when the Policy was issued.

74. Plaintiff is entitled to recover all losses caused by COVID-19 and/or civil authority orders.

75. Defendant was advised of Plaintiff's claims and demand for coverage under the Travelers Policy.

76. Plaintiff complied with all requirements of the Policy.

77. Defendant is duty bound and obligated under the Travelers Policy to make fair and reasonable efforts and offers to resolve Plaintiff's claim.

78. Defendant breached the terms and provisions of the Travelers Policy by denying the claims of Plaintiff for all losses caused by COVID-19 and the civil authority orders.

79. The breach of the indemnification obligations under the Travelers Policy by Defendant has caused Plaintiff to suffer loss and harm.

80. Defendant is required to pay Plaintiff all covered losses caused by COVID-19 and civil authority orders including business income, extra expense, contamination civil authority and other coverages under the Travelers Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein prays for a declaration for each of the following:

A. For a declaration that:

1. The civil authority orders prohibit access to Plaintiff's Insured Premises.

2. The civil authority order "prohibits access" as defined in the Travelers Policy.

3. The Travelers Policy civil authority coverage applies to Plaintiff due to physical loss or damage at the insured premises or other premises in the immediate area of the Insured Premises.

4. The Plaintiff is entitled to coverage for business income loss caused by the referenced orders.

5. The Travelers's Exclusion of Loss Due to Virus or Bacteria does not apply to Plaintiff's business income losses.

6. The inability to use the insured premises are a physical loss or damage as defined in the policy.

7. Travelers's denial of coverage for losses caused by the referenced civil authority orders violates public policy.

B. For an Order requiring Defendant to pay Plaintiff all covered losses caused by loss of access to the Insured Premises including business income, extra expense, contamination, civil authority and other coverages under the Travelers Policy.

C. Such other relief as the Court deems appropriate.

## **DEMAND FOR A JURY TRIAL**

Plaintiff requests a jury trial for all Counts for which a trial by jury is permitted by law.

Respectfully submitted,

BY: _____

Dated: May 8, 2020

Gregory S. Spizer, Esquire
NJ I.D. NO: 043091998
Ryan D. Hurd, Esquire
NJ I.D. NO: 022402007
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
gspizer@anapolweiss.com
rhurd@anapolweiss.com
Counsel for Plaintiff