## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHESTER C. CHIANESE DDS LLC,

*Plaintiff*,

v.

TRAVELERS CASUALTY
INSURANCE COMPANY OF
AMERICA,

*Defendant*.

Case No. 3:20-cv-05702-MAS-ZNQ

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Liza M. Walsh
William T. Walsh, Jr.
WALSH PIZZI O'REILLY FALANGA
LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, N.J. 07102
(973) 757-1100

Stephen E. Goldman
(*pro hac vice* motion to be
filed)
Wystan M. Ackerman
(*pro hac vice* motion to be
filed)
Denis J. O'Malley
(*pro hac vice* motion to be
filed)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8200

*Attorneys for Defendant,*
*Travelers Casualty Insurance*
*Company of America*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ..................................................................................................... 1

II.    PROCEDURAL HISTORY AND ALLEGED FACTS ......................................... 3

    A.    This Lawsuit ................................................................................................. 3

    B.    Contract Language At Issue ....................................................................... 6

        1.    Relevant Coverage Provisions ..................................................... 6

        2.    The Virus Exclusion ...................................................................... 8

III.   LEGAL STANDARDS ........................................................................................... 9

IV.   ARGUMENT ........................................................................................................ 10

    A.    Plaintiff Is Not Entitled to Civil Authority Coverage as a Matter of Law ........... 11

        1.    Civil Authority Coverage Does Not Apply Because the Orders Did Not "Prohibit Access" to Plaintiff's Premises ......................................... 12

        2.    Civil Authority Coverage Does Not Apply Because the Complaint Does Not Allege That the Orders Were "Due to Direct Physical Loss of or Damage to Property" ...................................... 16

        3.    Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus or Other Excluded Causes of Loss ................... 19

    B.    Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law ....................................................... 26

        1.    The Complaint Fails to Plead Any "Direct Physical Loss of or Damage to Property" at the Insured Premises ......................................... 27

        2.    Plaintiff's Proposed Interpretation of the Policy is Contrary to Basic Rules of Insurance Policy Interpretation ...................................... 34

        3.    Plaintiff's Alleged Losses Were Not Caused by a Covered Cause of Loss ............................................................. 37

V.    CONCLUSION ..................................................................................................... 39

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*,
  763 N.Y.S.2d 243 (N.Y. App. Div. 2003) .............................................................15

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*,
  67 F. App'x 248 (5th Cir. 2003) (unpublished) ....................................................14

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
  308 F. Supp. 2d 331 (S.D.N.Y. Mar. 12, 2004) ....................................................15

*Aetna Cas. & Sur. Co. v. Morton Int'l Inc.*,
  1995 WL 865782 (N.J. Super. Ct. Law Div. Aug. 7, 1995) ..................................35

*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir.1994).................................................................................9, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................9

*Backroads Corp. v. Great Northern Ins.*,
  2005 WL 1866397 (N.D. Cal. 2005) .....................................................................14

*Bartley v. Travelers*,
  2020 WL 1987251 (D.N.J. Apr. 27, 2020) ..............................................................4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................9

*Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.*,
  218 N.J. Super. 516, 528 A.2d 76 (N.J. Super. Ct. App. Div. 1987).....................23

*Bruni v. City of Pittsburgh*,
  824 F.3d 353 (3d Cir. 2016).....................................................................................9

*By Dev., Inc. v. United Fire & Cas. Co.*,
  2006 WL 694991 (D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609 (8th Cir.
  2006) ......................................................................................................................16

*Certain Underwriters at Lloyd's London v. Creagh*,
  2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd*, 563 Fed. App'x 209 (3d
  Cir. 2014) ...............................................................................................................21

*Clarke v. State Farm Fla. Ins.*,
  123 So. 3d 583 (Fla. Dist. Ct. App. 2012) .............................................................22

*Commstop, Inc. v. Travelers Indemn. Co. of Conn.*,
   2012 WL 1883461 (W.D. La. 2012).................................................................................16

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016)...........................................................................................9

*In re: COVID-19 Business Interruption Protection Insurance Litigation*,
   MDL No. 2942 ...................................................................................................................1

*Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*,
   226 N.J. 403, 143 A.3d 273 (2016)..........................................................................10, 34

*Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*,
   774 N.Y.S.2d 710 (N.Y. App. Div. 2004) ...................................................................38

*D'Agostino v. Johnson & Johnson, Inc.*,
   133 N.J. 516, 628 A.2d 305 (1993)..............................................................................23

*Dae Assocs., LLC v. AXA Art Ins. Corp.*,
   158 A.D.3d 493 (N.Y. App. Div. 2018) ......................................................................30

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
   636 F.3d 683 (5th Cir. 2011) .................................................................................. 17-18

*Doe v. State Farm Fire & Cas. Co.*,
   2015 WL 11083311 (N.H. Sept. 21, 2015)..................................................................22

*Gavrildes Mgmt. Co. v. Michigan Ins. Co.*,
   Case No. 20-258-CB-C30 .............................................................................................30

*Goldenberg v. Indel, Inc.*,
   741 F. Supp. 2d 618 (D.N.J. 2010) ...........................................................................9, 20

*Gregory Packaging, Inc. v. Travelers Property Cas. Co. of America*,
   2014 WL 6675934 (D.N.J. Nov. 25, 2014) .................................................................33

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*,
   486 S.E.2d 249 (N.C. App. 1997).............................................................................29, 34

*HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*,
   527 N.E.2d 1179 (Mass. App. Ct. 1988) ....................................................................30

*Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*,
   127 A.D.3d 922 (N.Y. App. Div. 2015) ..................................................................25, 39

*J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*,
   2007 WL 9775576 (S.D. Miss. Nov. 19, 2007)...........................................................29

*Jernigan v. Nationwide Mut. Ins. Co.*,
    2006 WL 463521 (N.D. Cal. Feb. 27, 2006) ..........................................................38

*Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*,
    2014 WL 1041831 (S.D.N.Y. Mar. 18, 2014) .........................................................38

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*,
    2010 WL 4026375 (E.D. La. Oct. 12, 2010) ....................................................17, 19

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins.
    Co. of Hartford*,
    2007 WL 2489711 (M.D. La. Aug. 29, 2007) .........................................................16

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
    2020 WL 886120 (D.S.C. Feb. 24, 2020) ...............................................................18

*Lambi v. Am. Family Mut. Ins. Co.*,
    498 F. App'x 655 (8th Cir. 2013) ...........................................................................22

*Longobardi v. Chubb Ins. Co. of New Jersey*,
    121 N.J. 530, 582 A.2d 1257 (1990) ................................................................10, 22

*Mar. Park, LLC v. Nova Cas. Co.*,
    2019 WL 1422918 (N.J. Super. Ct. App. Div. Mar. 29, 2019) ...............................20

*Nevers v. Aetna Ins. Co.*,
    546 P.2d 1240 (Wash. Ct. App. 1976) ....................................................................30

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014) .................................................................29, 34

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,
    2014 WL 12480022 (N.D. Ga. May 23, 2014) .......................................................29

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
    2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ...................................................14, 19

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ....................................................................................4

*Pentair, Inc. v. American Guar. and Liab. Ins. Co.*,
    400 F.3d 613 (8th Cir. 2005) ...................................................................................29

*Philadelphia Indem. In. Co. v. Healy*,
    156 F. App'x 472 (3d Cir. 2005) .............................................................................23

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005) ...............................................................14, 34

*Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*,
  2000 WL 35572338 (D.N.J. June 6, 2000)............................................................10

*Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*,
  311 F.3d 226 (3d Cir. 2002)..................................................................................31, 33

*Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*,
  2007 WL 9703576 (S.D. Fla. Oct. 19, 2007)...........................................................25

*Princeton Women's Ctr. v. ProSelect Ins. Co.*,
  2011 WL 4901310 (D.N.J. Oct. 14, 2011).............................................................35-36

*Robert W. Hayman, Inc. v. Acme Carriers, Inc.*,
  303 N.J. Super. 355, 696 A.2d 1125 (App. Div. 1997) ...........................................21

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
  302 A.D.2d 1 (N.Y. App. Div. 2002) .................................................................28, 35

*Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*,
  2006 WL 2850465 (D. Or. Sept. 29, 2006) .............................................................35

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
  2010 WL 2696782 (M.D. Pa. July 6, 2010)........................................................13, 16

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
  2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ......................................................17, 19

*Southern Hospitality, Inc. v. Zurich American Ins.*,
  393 F.3d 1137 (10th Cir. 2004) ........................................................................13-14

*State v. Signo Trading Int'l, Inc.*,
  130 N.J. 51, 612 A.2d 932 (1992).........................................................................23

*State, Dep't of Envtl. Protection v. Signo Trading Int'l, Inc.*,
  235 N.J. Super. 321, 562 A.2d 251 (N.J. Super. Ct. App. Div. 1989)....................23

*Syufy Enterprises v. The Home Insurance. Co. of Indiana*,
  1995 WL 129229 (N.D. Cal. Mar. 21, 1995)......................................................13-14

*Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*,
  1995 WL 70152 (Minn. Ct. App. Feb. 21, 1995) (unpublished) ...........................30

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
  439 F.3d 128 (2d Cir. 2006)..................................................................................18

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*,
  968 A.2d 724 (N.J. Super. Ct. App. Div. 2009)...............................................31-33

*Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*,
  116 N.J. 517, 562 A.2d 208 (1989)..................................................................... 10, 23-24

*Western Fire Ins. Co. v. First Presbyterian Church*,
  437 P.2d 52 (Colo. 1968)..........................................................................................32

*Woodcliff Lake Bd. of Educ. v. Zurich Am. Ins. Co.*,
  2013 WL 4081012 (N.J. Super. Ct. App. Div. Aug. 14, 2013) ...............................21

**Statutes**

28 U.S.C. § 1407...........................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 10 .........................................................................................................4

Fed. R. Civ. P. 12 .....................................................................................................9, 40

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 193 ...........................................10

## I.     INTRODUCTION

The COVID-19 pandemic has affected the public and most businesses throughout the country in unprecedented ways. But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

In this action, Plaintiff Chester C. Chianese DDS LLC ("Plaintiff" or "Chianese"), a dental practice based in Toms River, New Jersey, seeks a declaratory judgment that it is entitled to insurance coverage for claimed business income losses caused by the COVID-19 virus and orders issued by New Jersey Governor Phil Murphy and other state authorities to slow the spread of the virus and protect the health, safety, and welfare of New Jersey residents.[1] Plaintiff also alleges a breach of contract claim against its insurer, Travelers Casualty Insurance Company of America ("Travelers"). But Plaintiff ignores the material terms of the insurance policy it purchased from Travelers—foremost among them an explicit exclusion of *any* type of property coverage, for *any* "loss or damage caused by or resulting from

---

[1] Other similar COVID-19-related suits seeking coverage for business income losses have been filed by other plaintiffs against other insurers, including an affiliate of Travelers, in this Court, and similar cases are pending in numerous other federal and state courts across the country. Two motions for transfer and coordination or consolidation under 28 U.S.C. § 1407 were filed with the Judicial Panel on Multidistrict Litigation ("JPML") in *In re: COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942. Travelers has opposed the motions for transfer and coordination or consolidation. The JPML heard oral argument on July 30, 2020, and a decision is expected before this motion is fully-briefed.

any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

In addition to the case-dispositive virus exclusion, the Complaint should be dismissed for several additional reasons. *First*, the Complaint fails to allege facts that, if true, would establish the essential requirements for Civil Authority coverage, which are: (1) "action of civil authority that prohibits access to the described [i.e., insured] premises"; (2) the civil authority action is "due to direct physical loss of or damage to property at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises"; and (3) the direct physical loss of or damage to property is "caused by or resulting from a Covered Cause of Loss." (Ex. A, p. 171.) Specifically, the government orders (the "Orders") that Plaintiff relies on did not "prohibit access" to Plaintiff's premises, but rather permitted access for emergency/urgent procedures. In addition, Plaintiff does not allege, and the Orders do not reflect, that any of the Orders was issued "due to" direct physical loss of or damage to property at any location, let alone property located within 100 miles of Plaintiff's insured premises. To the contrary, the Complaint alleges, and the Orders confirm, that they were issued to mitigate the spread of COVID-19 and protect the health of New Jersey residents.

*Second,* to the extent Plaintiff claims entitlement to coverage under the Policy's Business Income and Extra Expense coverages, the Complaint fails to plead

facts supporting an essential requirement of each of those coverages: the existence of "direct physical loss of or damage to property" at insured premises "caused by or resulting from a Covered Cause of Loss." (*Id.*, pp. 158-159.) Plaintiff does not allege that any of its property (either the building or its business personal property) was physically lost or damaged. As discussed below, absent any "direct physical loss of or damage to property at [the insured] premises," Plaintiff cannot establish entitlement to Business Income or Extra Expense coverage.

Because the Complaint does not plead facts sufficient to support Plaintiff's entitlement to coverage under the Policy, its breach of contract claim fails as a matter of law, and it is not entitled to declaratory relief. And again, even if Plaintiff could have pled these factual requirements for coverage, Plaintiff's alleged losses—which clearly result from Coronavirus—would still be *expressly excluded* by the virus exclusion. Accordingly, the Complaint should be dismissed in its entirety and with prejudice.

## II.    PROCEDURAL HISTORY AND ALLEGED FACTS

### A.    This Lawsuit

Plaintiff operates a dental office in Toms River, New Jersey. (Complaint ("Compl."), ¶ 6). Plaintiff purchased a commercial insurance policy from Travelers that bears policy number 680-8J185275-19-42 ("Policy"), and has effective dates of August

11, 2019 to August 11, 2020. (*Id*., ¶ 16).2 The Complaint seeks coverage under the Policy's Civil Authority, Business Income, and Extra Expense provisions. (*Id*., ¶¶ 23, 67, 80).3

According to the Complaint, Plaintiff closed its dental practice on March 18, 2020, due to the public health Orders. (*Id.,* ¶ 51). The Orders cited in the Complaint are as follows:

- Executive Order No. 103, issued by Governor Murphy on March 9, 2020, "declaring a state of Emergency in New Jersey as a result of COVID-19" (*id.*, ¶ 39; ECF No. 1-3);

- Executive Order No. 104, issued by Governor Murphy on March 16, 2020, "declaring it 'necessary to limit the unnecessary movement of individuals in and around their communities and person-to-person interactions'" (Compl., ¶ 41; ECF No. 1-4);

- Executive Order No. 107, issued by Governor Murphy on March 21, 2020, "ordering all New Jersey residents to stay at home except for

---

[2] *See also* Travelers Policy No. 680-8J185275-19-42, a certified copy of which is attached hereto as <u>Exhibit A</u>. The Court may consider the Policy in reviewing this Motion to Dismiss because it is specifically referenced in Plaintiff's Complaint and portions of the Policy are also attached thereto. *Bartley v. Travelers*, 2020 WL 1987251, *2 (D.N.J. Apr. 27, 2020) ("Courts in this District have frequently considered insurance policies . . . when deciding motions to dismiss."); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that, on motion to dismiss, court may consider "exhibits attached to the complaint").

[3] The Complaint contains vague references to "contamination" coverage and "other coverages" (Compl., ¶ 80; Prayer for Relief), but the Policy does not contain a "contamination" coverage and Plaintiff does not specify any other coverages it seeks. The facts alleged do not implicate any coverages other than those addressed herein.

necessary travel" and "order[ing] that all non-essential businesses close until further notice" (Compl., ¶ 42; ECF No. 1-5);

- A "COVID-19 Advisory for New Jersey Dental Professionals," issued March 21, 2020 by the New Jersey Attorney General's office and the New Jersey State Board of Dentistry, which advised that "[d]entists should cancel or postpone any elective procedure or 'routine' service until at least April 20, 2020, to limit exposure to and transmission of the virus" and that "[d]entists *should provide emergency care* to their existing patients and others seeking *urgent care*." (ECF No. 1-6, at p. 2 of 3 (emphasis added); *see also* Compl., ¶ 43);

- Executive Order No. 109, issued by Governor Murphy on March 23, 2020, "suspend[ing]" all "'elective' surgeries performed on adults, whether medical or dental, and all 'elective' invasive procedures performed on adults, whether medical or dental"; the order defined "elective" procedures as those "that can be delayed without undue risk to the current or future health of the patient as determined by the patient's treating physician or dentist" (ECF No. 1-7, at p. 5 of 8; *see also* Compl., ¶ 44);

- A "COVID-19 Updated Notice to Dental Professionals," issued April 15, 2020 by the New Jersey Attorney General's office and the New Jersey State Board of Dentistry "indicat[ing] that 'dentists are not permitted to resume 'elective' surgeries and invasive procedures for adult patients until further notice'" (Compl., ¶ 45; ECF No. 1-8); and

- Executive Order No. 138, issued by Governor Murphy on May 6, 2020, extending his prior executive orders as a "necessary and appropriate . . . action against this public health hazard to protect and maintain the health, safety, and welfare of New Jersey residents" (Compl., ¶¶ 48-49; ECF No. 1-9).

Plaintiff alleges that, "[a]s a result of these Orders," it closed its practice and has "suffered business income, civil authority and other related losses" for which it

sought coverage under the Policy. (Compl., ¶¶ 51, 57). Travelers denied Plaintiff's claim by letter dated March 30, 2020. (*Id.,* ¶¶ 4, 26; ECF No. 1-2).

In this action, Plaintiff seeks a judgment declaring that the Policy insures the Business Income and Civil Authority losses it allegedly sustained and the Extra Expenses it incurred because of the Orders. (*See id.,* Count I, Prayer for Relief). Plaintiff also seeks contractual damages for Travelers' refusal to pay its claim. (*See id.,* Count II).

## B.   Contract Language At Issue

### 1.   Relevant Coverage Provisions

Plaintiff purchased an Office Pac® policy from Travelers. The Policy insured certain of Plaintiff's property from covered causes of loss, such as a fire or windstorm. When a covered cause of loss results in physical loss of or damage to the insured property which forces Plaintiff to suspend its operations, the Policy also provides limited coverage for business income losses and extra expenses incurred by Plaintiff during the period of restoration. For example, in the event of a fire that requires a suspension of business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations caused by the fire damage and occurs during the "period of restoration"— i.e., while the repairs are being made. The Business Income and Extra Expense coverage provides, in relevant part:

### a.   Business Income

. . .

(2)   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by <u>direct physical loss of or damage to property at the described premises</u>. The loss or damage must be caused by or result from a <u>Covered Cause of Loss</u>. . . .

. . .

### b.   Extra Expense

(1)   Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss of or damage to property</u> caused by or resulting from a <u>Covered Cause of Loss</u>.

(Ex. A, pp. 158-159 (underscores added)).[4] As highlighted above, key requirements for the Business Income and Extra Expense coverages include "direct physical loss of or damage to property" at the insured premises that is "caused by or resulting from a Covered Cause of Loss." The term "Covered Causes of Loss" means "RISKS OF DIRECT PHYSICAL LOSS unless the loss is . . . [e]xcluded." (*Id.*, pp. 159-60).

In the provision entitled "Civil Authority," which is the focal point of the Complaint, coverage for Business Income and Extra Expense resulting from a "Covered Cause of Loss" is extended to:

> [T]he actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that <u>prohibits access</u> to the described premises. The civil authority action must be <u>due</u>

---

[4] A certified copy of the Policy is attached as <u>Exhibit A</u> hereto. All references to page numbers of the Policy correspond to the "Travelers Doc Mgmt." number that appears in the bottom margin, right-hand side of each page of <u>Exhibit A</u>.

> to direct physical loss of or damage to property at
> locations, other than described premises, that are within
> 100 miles of the described premises, caused by or resulting
> from a Covered Cause of Loss.

(*Id.,* p. 171 (emphasis added)). As highlighted, three key requirements for this coverage to apply are: (i) the action of civil authority must prohibit access to the described (i.e., insured) premises; (ii) the action of civil authority must be due to direct physical loss of or damage to property other than at insured premises, but within 100 miles of it; and (iii) the loss or damage must have been "caused by or result[ed] from a Covered Cause of Loss" (i.e., a cause that is not excluded).

### 2.     The Virus Exclusion

The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which "applies to all coverage under all forms and endorsements that comprise" the Commercial Property Coverage Part of the Policy "including but not limited to forms or endorsements that cover . . . business income, extra expense, rental value or action of civil authority." (*Id.*, p. 312). The exclusion concisely states in plain terms that:

> We will not pay for loss or damage caused by or resulting from any
> virus, bacterium or other microorganism that induces or is capable
> of inducing physical distress, illness or disease.

(*Id.* (emphasis added)).

## III.   LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a Complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (describing three-step process for applying *Twombly* and *Iqbal*). A court deciding a motion to dismiss under Rule 12(b)(6) must "accept[] all of the Complaint's well-pleaded facts as true." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). Excepted from this presumption of truth are any "legal conclusions" couched as factual allegations, *id.*, and any allegations in the Complaint which are contradicted by documents attached to or relied upon in the Complaint, *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994)).

Under New Jersey law,[5] "the words of an insurance policy should be given their ordinary meaning." *Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 537, 582 A.2d 1257, 1260 (1990). Courts interpreting insurance policies must "give effect to the whole policy, not just one part of it." *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 226 N.J. 403, 416, 143 A.3d 273, 280 (2016). Moreover, "in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi*, 121 N.J. at 537, 582 A.2d at 1260. "[C]ourts should not write for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 529, 562 A.2d 208, 214 (1989).

## IV.   ARGUMENT

The facts pleaded in the Complaint demonstrate as a matter of law that Plaintiff cannot prove an entitlement to coverage under the Policy because Plaintiff fails to satisfy any of the requirements for coverage under the Civil Authority,

---

[5] New Jersey law applies here. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, i.e., New Jersey. *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 2000 WL 35572338, *10 (D.N.J. June 6, 2000). "In New Jersey, courts generally follow the 'site-specific' approach set forth in § 193 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS to resolve choice-of-law issues arising from the interpretation of casualty insurance contracts." *Id.* Where the policy insures property located in a single state, courts will apply the law of that state. *Id.* Here, the Policy insures only one location, which is located in New Jersey. (Ex. A, p. 2). Accordingly, New Jersey law applies here.

Business Income, or Extra Expense coverages. Accordingly, Plaintiff's claims for declaratory relief regarding coverage under the Policy and for breach of the insurance contract should be dismissed with prejudice.

### A.    Plaintiff Is Not Entitled to Civil Authority Coverage as a Matter of Law

Civil Authority coverage insures certain business income losses and extra expenses if the following three prerequisites are satisfied: (1) the business income and extra expense losses are "caused by action of civil authority that *prohibits access* to the [insured] premises"; (2) the civil authority action is "*due to direct physical loss of or damage to property* at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises"; and (3) the direct physical loss of or damage to property is "*caused by or result[s] from a Covered Cause of Loss*." (Ex. A, p. 171 (emphasis added)). The Complaint fails to satisfy any of these three requirements. First, the Complaint implicitly concedes—and the Orders confirm—that access to Plaintiff's dental practice was never prohibited. Rather, access to the premises was at all times permitted for emergency/urgent (i.e., non-"elective") procedures. (*See* ECF No. 1-7, at p. 5 of 8). Notwithstanding its ability to continue operating in this capacity, Plaintiff allegedly made the unilateral decision to close its practice entirely (which none of the Orders required). Second, the Complaint alleges, and the Orders reflect, that they were issued to slow the spread of the COVID-19 virus, not due to any physical loss of or damage to property. Third, the Policy

explicitly excludes losses "caused by or resulting from any virus" from its Covered Causes of Loss. Because Plaintiff's allegations fail to satisfy any of the three requirements for Civil Authority coverage, dismissal is warranted as to Plaintiff's claims regarding this coverage.

### 1. Civil Authority Coverage Does Not Apply Because the Orders Did Not "Prohibit Access" to Plaintiff's Premises

Plaintiff's allegations fail to establish the first requirement for Civil Authority coverage: that the civil authority action "prohibits access" to the described premises, i.e., Plaintiff's dental office. As Plaintiff tacitly admits in the Complaint, the Orders did not require Plaintiff to close its office. Rather, one of the Orders, Governor Murphy's Executive Order No. 109 (and as extended by Executive Order No. 138) only required that Plaintiff cease performing elective procedures, i.e., those "that can be delayed without undue risk to the current or future health of the patient." (Compl., ¶ 44; ECF No. 1-7, at p. 5 of 8; ECF No. 1-9). The Orders allowed Plaintiff to remain in operation to provide emergency/urgent procedures. (ECF No. 1-7, at p. 5 of 8). An advisory issued by the New Jersey Office of the Attorney General explained that "[d]entists should provide emergency care to their existing patients and others seeking urgent care." (ECF No. 1-6, at p. 2 of 3.) Thus, the Orders merely limited the types of procedures that Plaintiff could perform while the Orders remained in effect. That Plaintiff apparently decided to close down its practice entirely, (Compl.,

¶ 51), does not satisfy the prohibition of access requirement for Civil Authority coverage under the plain language of the Policy.

Courts interpreting civil authority provisions uniformly hold that the phrase "prohibit access" means to "formally forbid" or "prevent" *any* access to the premises. *See, e.g.*, *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004). Limitations restricting access are not sufficient. For example, in *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782 (M.D. Pa. July 6, 2010), the court explained that "where the action of a civil authority merely hinders access to the covered premises, *without completely prohibiting access*, federal courts have held that such action is not covered" under civil authority provisions. *Id.* at *4 (emphasis added). The court found no coverage where a "majority of the customers" may not have been able to reach the insured's ski resort, but there was no "*complete inability* to access the premises." *Id.* at *5 (emphasis added). Similarly, in *Syufy Enterprises v. The Home Insurance. Co. of Indiana*, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995), the court addressed civil authority coverage for businesses affected by "dawn-to-dusk" curfews imposed by cities during the Rodney King riots. *Id.* at *1. A movie theater operator cancelled showings during the curfew period, presumably because customers could not attend. *Id.* at *1.  The court found no coverage because the orders did not "deny access to a Syufy theater" or "prohibit[] any individual from entering a theater." *Id.* at *2. That the insured

"opted to close its theaters" as a result of the curfews did not satisfy the policy requirement. *Id.*

Civil authority coverage cases after the September 11, 2001 terrorist attacks reinforced this distinction between orders that "prohibit access" to an insured premises and those that limit business operations, even severely, but without prohibiting access. Courts across the country uniformly rejected attempts by hotels, airport parking garages, and even airport gift shops to claim coverage for losses incurred as a result of the FAA orders because they did not "prohibit access" to the various businesses. *See Southern Hospitality*, 393 F.3d at 1140 ("The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations."); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks.); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (While the order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Backroads Corp. v. Great Northern Ins.*, 2005 WL 1866397, *6 (N.D. Cal. 2005) (similar); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable

means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores.). Likewise, post-September 11th orders imposing "vehicular traffic restrictions" were insufficient to trigger coverage even though they "restrain[ed] . . . normal operating procedures" for businesses. *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335-36 (S.D.N.Y. Mar. 12, 2004); *see also 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003).

Here, Executive Order No. 109 (the only Order that imposed *any* restriction on Plaintiff's dental practice) permitted Plaintiff to perform emergency or urgent treatment in its dental offices. (ECF No. 1-7, at p. 5 of 8; *see also* ECF No. 1-6, at p. 2 of 3 (explaining that "emergency care" and "urgent care" should be provided).) While Plaintiff alleges that it closed its dental practice "[a]s a result of the[] Orders," (Compl., ¶ 51), that claim is directly contradicted by the Orders themselves, which control here. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."). Executive Order No. 109's limitation on the services Plaintiff could offer does not constitute a prohibition of access within the meaning of the Policy, which requires that an applicable order "prohibit," not limit, access.

15

Courts uniformly hold that the same civil authority provision at issue here requires that an order "completely prohibit[] access"—not "merely hinder[] access"—to implicate coverage. *Ski Shawnee*, 2010 WL 2696782 at *5; *see also Commstop, Inc. v. Travelers Indemn. Co. of Conn.*, 2012 WL 1883461, *9 (W.D. La. 2012) ("'Civil Authority' provision . . . require[s]" insured to show "access to [insured property] was totally and completely prevented—i.e., made impossible— by [the civil authority action].")*; Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2489711, *4 (M.D. La. Aug. 29, 2007) (holding coverage not triggered by order that "encouraged" residents to stay off streets before hurricane, because it did not "actually and completely prohibit[] access to the insured premises")*; By Dev., Inc. v. United Fire & Cas. Co.*, 2006 WL 694991, *5 (D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609 (8th Cir. 2006). Plaintiff does not and cannot allege that the Orders "completely prohibited" access to its business premises while permitting emergency/urgent treatment.

## 2. Civil Authority Coverage Does Not Apply Because the Complaint Does Not Allege That the Orders Were "Due to Direct Physical Loss of or Damage to Property"

Plaintiff's allegations also fail to satisfy the second requirement for Civil Authority coverage: that "[t]he civil authority action must be *due to direct physical loss of or damage to property* at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises, caused by or resulting from a Covered

Cause of Loss." (Ex. A, at p. 171 (emphasis added)). Courts have consistently held that similar policy provisions require "a *causal link* between *prior* damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012, *8 (S.D. Tex. Feb. 15, 2008) (words "due to" in civil authority provision require a "close causal link" between previous property damage and civil authority order); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, *3 (E.D. La. Oct. 12, 2010) ("The direct nexus between the damage sustained and the order that the policy requires suggests that the Policy was designed to address the situation where damage occurs and the civil authority subsequently prohibits access.").

Here, Plaintiff alleges that the Orders were issued "to mitigate the spread of COVID-19" and "to protect and maintain the health, safety, and welfare of New Jersey residents." (Compl., ¶¶ 30, 49).[6] None of the Orders relied upon and attached to the Complaint makes *any* reference to the order being issued "due to" any

---

[6] *See also, e.g.*, ECF No. 1-3, at p. 4 of 9 (noting need "to implement appropriate measures to mitigate the spread of COVID-19"); ECF No. 1-4, at p. 3 of 10 (describing purpose as "effort to reduce the rate of community spread of the disease"); ECF No. 1-5, at page 4 of 14 (same); ECF No. 1-6, at p. 2 of 3 ("These recommendations are designed to mitigate the spread of COVID-19"); ECF No. 1-7, at p. 4 of 8 (describing purpose as "combatting the spread of the virus"); ECF No. 1-8, at p. 2 of 2 (describing Orders' purpose generally as "to limit exposure to and transmission of COVID-19 and preserve personal protective equipment"); ECF No. 1-9, at p. 2 of 7 (describing Orders' purpose generally as "to protect the public health, safety, and welfare against the emergency created by COVID-19").

preexisting property damage at any location, let alone within 100 miles of Plaintiff's premises. *See* footnote 6 *supra*. Rather, Governor Murphy has explicitly stated that he issued the Orders generally to facilitate a statewide response to the COVID-19 public health emergency. (*E.g.*, ECF No. 1-9, p. 2 of 7 ("I issued a series of Executive Orders . . . to protect the public health, safety, and welfare against the emergency created by COVID-19, including Executive Order Nos. 104-133 and 135-137 . . . .")). Of particular relevance here, Governor Murphy issued Executive Order No. 109, which restricted elective surgeries and invasive procedures, specifically to ensure that health care providers, facilities, and equipment would remain available "to treat those who are critically ill" at a time when "hospitalizations, intensive care unit admissions, and ventilator usage were rapidly spiking." (Executive Order No. 145, attached hereto as <u>Exhibit B</u>, at p. 2 (rescinding Executive Order No. 109)). This is another independent reason why Plaintiff is not entitled to coverage under the Civil Authority provision. *See*, *e.g.*, *Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage because order was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (civil authority coverage did not apply where "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks" on September 11, 2001, not because of property damage to adjacent property); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, *8 (D.S.C. Feb.

24, 2020) (finding no coverage under civil authority provision where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'"); *Paradies Shops*, 2004 WL 5704715 at *7 (finding no coverage under civil authority provision where order issued after September 11th attacks "was issued as a result of the threat of additional terrorist acts," not due to existing property damage); *Jones, Walker*, 2010 WL 4026375 at *3 (finding no coverage based on lack of causal link between hurricane evacuation order and any damage to property occurring prior to issuance of order); *South Texas Med. Clinics*, 2008 WL 450012 at *10 (finding no coverage under civil authority provision where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred in Florida and the Gulf of Mexico").

### 3.    Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus or Other Excluded Causes of Loss

Plaintiff's allegations also fail to satisfy the third requirement for Civil Authority coverage: pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other things, the action is taken due to physical loss or damage to property within 100 miles of the insured premises which is "*caused by or result[s] from a Covered Cause of Loss*." (Ex. A, at p. 171 (emphasis added)). As the Policy makes clear, an *excluded* risk of loss is *not* a Covered Cause of Loss. (*Id.*, at p. 159-160; *see also Mar. Park, LLC v. Nova Cas.*

*Co.*, 2019 WL 1422918, *3 (N.J. Super. Ct. App. Div. Mar. 29, 2019) (per curiam; unpublished) ("Under the civil authority provision, the prohibition on access to the property experienced by the insured must be the result of damage caused by a 'covered cause of loss.'").

Here, the Complaint alleges only vaguely, and in a conclusory manner, that "other premises in the immediate area" of the insured premises purportedly sustained unspecified "physical loss or damage," as did the insured premises. (Compl., Prayer for Relief). Such conclusory allegations are insufficient. *Goldenberg*, 741 F. Supp. 2d at 624. In any event, the Complaint expressly and repeatedly alleges that the claimed losses for which Plaintiff seeks to recover were "caused by COVID-19 and the civil authority orders," (Compl., ¶¶ 74, 78), and that the Orders were issued "to mitigate the spread of COVID-19," (*id.* ¶ 30; *see also* footnote 6, *supra*).[7] Because neither the Coronavirus nor the Orders issued to slow its spread constitute a Covered Cause of Loss, Plaintiff's claim for Civil Authority coverage fails.

Coronavirus—the alleged cause of any direct physical loss and/or damage vaguely alleged in a conclusory manner—is excluded from the Policy's Covered Causes of Loss by the broad exclusion for "loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of

---

[7] Although Travelers does not seek adjudication of this issue, which is beyond the scope of this Motion, the coronavirus (SARS-CoV-2) that causes COVID-19 disease does not and cannot cause physical damage to property.

inducing physical distress, illness or disease." (Ex. A, at p. 312 (emphasis added)). New Jersey law instructs that "when the language of the policy is clear, the court is bound to enforce its terms as they are written" and courts "must not disregard the clear import and intent of the exclusionary clauses in the policy." *Robert W. Hayman, Inc. v. Acme Carriers, Inc.*, 303 N.J. Super. 355, 357, 696 A.2d 1125, 1127 (App. Div. 1997) (citations omitted). New Jersey courts evaluating policy exclusions foreclosing coverage for losses "caused by" or "resulting from" specified noncovered risks have found the provisions unambiguous and applied their plain meaning. *See, e.g.*, *id.* at 361, 696 A.2d at 1129 ("[T]here is no ambiguity in this commercial policy which expressly excludes 'loss or damage <u>caused by or resulting from</u> ... any fraudulent, dishonest, or criminal act(s)' of any employee or representative of the insured[] . . . ." [emphasis added]); *Woodcliff Lake Bd. of Educ. v. Zurich Am. Ins. Co.*, 2013 WL 4081012, *5 (N.J. Super. Ct. App. Div. Aug. 14, 2013) ("The exclusion states Zurich 'will not pay for loss or damage <u>caused by or resulting from</u> [the][d]ischarge, dispersal, seepage, migration, release or escape of 'pollutants'....' This language is clear and unambiguous . . . ." [emphasis added]).[8]

---

[8]   Several courts, including those in this Circuit, have enforced virus or microorganism exclusions in accordance with their clear and unambiguous language. *See, e.g.*, *Certain Underwriters at Lloyd's London v. Creagh*, 2013 WL 3213345, *4 (E.D. Pa. June 26, 2013) (holding that exclusion for "any loss . . . arising out of or relating to . . . [a] microorganism of any type" precluded coverage for damage to bathroom caused by bacteria from dead body), *aff'd*, 563 Fed. App'x 209 (3d Cir. 2014); *Doe v. State Farm Fire & Cas. Co.*, 2015 WL 11083311, *2 (N.H. Sept. 21, 2015) ("We conclude that a reasonable person in the position of the insured,

There is no question that the plain language of the virus exclusion controls here. The Complaint specifically (and necessarily) describes "COVID-19"—or, Coronavirus[9]—as a "virus" and acknowledges that it causes sickness and death. (Compl., ¶¶ 32, 47). Thus, as alleged by Plaintiff, the Coronavirus is a virus "that induces or is capable of inducing physical distress, illness or disease," which falls squarely within the scope of the virus exclusion. (Ex. A, 312). The Coronavirus is not a Covered Cause of Loss and therefore cannot give rise to Civil Authority coverage. Nonetheless, Plaintiff claims the Policy provides coverage for "losses caused by COVID-19 and/or civil authority orders," (Compl., ¶¶ 74, 78), and seeks a declaration that the virus exclusion does not apply to such losses, (*id.*, ¶ 64). To grant Plaintiff's requests would require the Court, contrary to New Jersey law, to "engage in a strained construction to support the imposition of liability," *Longobardi*, 121 N.J. at 537, 582 A.2d at 1260; and thereby "write for the insured a

---

based upon more than a casual reading of the policy as a whole, would understand the policy to exclude all diseases and viruses that can be transmitted from one person to another."); *Lambi v. Am. Family Mut. Ins. Co.*, 498 F. App'x 655, 656 (8th Cir. 2013) ("[T]he policy excluded bodily injury arising out of the actual or alleged transmission of a communicable disease, and infecting another with the HIV virus clearly falls within the plain and ordinary meaning of the transmission of a communicable disease."); *Clarke v. State Farm Fla. Ins.*, 123 So. 3d 583, 584 (Fla. Dist. Ct. App. 2012) (similar result, finding exclusion unambiguous).

[9] COVID-19 is the disease caused by the SARS-Cov-2 virus, commonly referred to as the Coronavirus. (*See* ECF No. 1-3, at p. 2 of 9).

better policy of insurance than the one purchased," *Walker Rogge, Inc.*, 116 N.J. at 529, 562 A.2d at 214.[10]

Plaintiff attempts to avoid application of the virus exclusion by alleging that the Coronavirus did not cause its losses but "[i]nstead, Plaintiff's losses were caused by the [Orders issued] to mitigate the spread of COVID-19 in the future." (Compl., ¶¶ 29-30). This argument fails for several reasons. *First*, Plaintiff's own allegations demonstrate that the Orders are inextricably intertwined with the reason they were issued: the Coronavirus. (*See*, *e.g.*, Compl., ¶ 30 (Orders were issued "to mitigate the spread of COVID-19 in the future"); *id.*, ¶ 49 (Orders were issued "to protect

---

[10] Plaintiff's conclusory allegation that Travelers violated public policy when it denied Plaintiff's claim pursuant to the virus exclusion is meritless, in addition to lacking any factual or legal support whatsoever. Under New Jersey law, courts "do not create their own public policy." *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 527, 628 A.2d 305, 311 (1993). Where the "plain language" of an insurance policy "cannot be fairly read" to provide the coverage sought, "public policy considerations alone are not sufficient to permit a finding of coverage." *State v. Signo Trading Int'l, Inc.*, 130 N.J. 51, 66, 612 A.2d 932, 940 (1992); *see also State, Dep't of Envtl. Protection v. Signo Trading Int'l, Inc.*, 235 N.J. Super. 321, 332–33, 562 A.2d 251 (N.J. Super. Ct. App. Div. 1989) ("Notwithstanding the 'highly significant policy considerations' raised by the issues under review, there exists no legal principle that would permit this court to ignore or circumvent the clear language of the insurance contracts." (citation and footnote omitted)); *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.*, 218 N.J. Super. 516, 528 A.2d 76 (N.J. Super. Ct. App. Div. 1987) (recognizing "competing public policies" but the court's "role is merely to interpret the language of the insurance contract"). Moreover, the Third Circuit has cautioned that federal courts should be loath to declare the public policy of New Jersey until the state's own courts have done so. *See Philadelphia Indem. In. Co. v. Healy*, 156 F. App'x 472, 478 (3d Cir. 2005). Plaintiff alleges no basis on which this Court could find that Travelers' denial of Plaintiff's claim violates public policy. Plaintiff's bare, conclusory allegation to that effect should thus be disregarded.

and maintain the health, safety, and welfare of New Jersey residents"). Plaintiff cannot avoid the application of the virus exclusion by recharacterizing its loss as being caused by Orders that were issued to slow the spread of the virus rather than being caused by the virus itself. Moreover, the virus exclusion expressly applies to the Civil Authority, Business Income and Extra Expense coverages. (Ex. A, at p. 312).  A virus cannot, in and of itself, close a business; rather, some form of human intervention (such as by government order or, as here, business decision) is obviously required to cause a business income or extra expense loss. To adopt Plaintiff's theory that the Orders, divorced from their purpose, constitute a Covered Cause of Loss not only would fly in the face of Plaintiff's express allegations regarding the Orders, it would render the virus exclusion nugatory and "write for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc.*, 116 N.J. at 529, 562 A.2d at 214.

*Second*, under the plain language of the Civil Authority provision, the Orders themselves cannot be the Covered Cause of Loss. The Civil Authority provision states that "[t]he civil authority action must be due to direct physical loss of or damage to property at locations, other than [the insured] premises, that are within 100 miles of the [insured] premises, caused by or resulting from a Covered Cause of Loss." (Ex. A, at p. 171). The Covered Cause of Loss must cause the direct physical loss or damage that results in the civil authority action. Plaintiff's proposed

24

interpretation, which appears to be that the "direct physical loss of or damage to property" was the "loss of use" of businesses caused by the Orders, reads the Civil Authority provision backwards. The physical loss or damage must cause the civil authority action, not vice versa. *See Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*, 2007 WL 9703576, *4 (S.D. Fla. Oct. 19, 2007) ("The order of civil authority cannot in any reasonable manner be construed as a 'peril.'").

Third, the Policy's Ordinance or Law exclusion provides that "[w]e will not pay for loss or damage caused directly or indirectly by . . . *[t]he enforcement of any ordinance or law . . . [r]egulating the* construction, *use* or repair of any property." (Ex. A, at p. 178). As a New York appellate court has explained, this exclusion "clearly and unambiguously excludes coverage for losses caused directly or indirectly by the enforcement of any ordinance or law regulating the . . . use . . . of any property" and "excludes coverage for losses, including business income losses, caused by the enforcement of the law." *Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 924 (N.Y. App. Div. 2015) (holding that, where dental practice could not operate for eleven months as a result of town's enforcement of ordinance requiring plaintiff to obtain a certificate of occupancy, Ordinance or Law exclusion precluded coverage for plaintiff's business income losses).[11]

---

[11] The Ordinance or Law exclusion does not preclude Civil Authority coverage when the specific prerequisites for that coverage are satisfied. As discussed above, Plaintiff has not and cannot allege the prerequisites for such coverage.

Thus, as a matter of law, Plaintiff is not entitled to Civil Authority coverage under the Policy nor to a declaration to that effect because the Complaint does not and cannot allege (1) that the Orders "prohibited access" to Plaintiff's premises; (2) that the Orders were "due to direct physical loss of or damage to property" within 100 miles of the insured premises; or (3) that any physical loss or damage to property within 100 miles of the insured premises was "caused by or result[ed] from a Covered Cause of Loss."

### B. Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law

The focal point of the Complaint is Civil Authority coverage. Yet the Complaint also makes passing references to Business Income and Extra Expense coverages, (Compl., ¶¶ 4, 16, 23, 60, 64, 65, 67, 80, Prayer for Relief), and seeks a declaration that Plaintiff "is entitled to coverage for business income loss caused by the referenced orders," (*id.*, Prayer for Relief, ¶ A.4). To the extent this is intended to plead a claim under the Business Income and Extra Expense provisions, this claim also fails as a matter of law.

The Policy's Business Income provision provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the [insured] premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." (Ex. A, pp. 158-59). The Extra Expense

provision similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." (*Id.* at p. 159). Here, Plaintiff's allegations fail to satisfy either of these two essential requirements for Business Income and Extra Expense coverage.

### 1. The Complaint Fails to Plead Any "Direct Physical Loss of or Damage to Property" at the Insured Premises

The Complaint includes allegations regarding the Coronavirus purportedly causing physical loss or damage generally, (*see* Compl., ¶ 37 (alleging that "COVID-19 can, and does live, on physical surfaces outside of the human body"); *id.*, ¶ 50 (alleging that "COVID-19 causes damage vis-à-vis contamination to property")), and suggests that the Coronavirus potentially *could* cause damage to Plaintiffs' property, (*id.*, ¶¶ 55-56 (describing Plaintiff's practice as "highly susceptible to contamination and damage" by Coronavirus).[12] Yet Plaintiff stops short of alleging that the Coronavirus was actually present in its premises, instead alleging that its premises are "highly susceptible" to contamination. (*See, e.g.*, *id.*, ¶ 29 (alleging "Plaintiff's losses were not directly caused by a virus"); *see also id.*,

---

[12] Although beyond the scope of this motion, what the Complaint describes would not constitute direct physical loss or damage as a matter of law. *See Social Life Magazine*, tr. at 5, 15 (Exhibit C hereto) (court explaining in case making allegations similar to Plaintiff's allegations that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").

¶ 56 (alleging a "*probability* of COVID 19 contamination" of the insured premises "[g]iven the nature of Plaintiff's business" [emphasis added]).

Because Plaintiff cannot plead that the insured premises was physically altered or impacted in any way, Plaintiff attempts to satisfy the "direct physical loss of or damage to property" requirement by alleging that "[l]oss of use of property, as here, constitutes direct physical loss or damage." (*Id.*, ¶ 27.) Courts have repeatedly rejected the argument that such a loss of use would constitute direct physical loss or damage, and no court has *ever* held that a temporary restriction on the use of a property or even a required closure of a property as a result of a government order constitutes "direct physical loss of or damage to property." For example, in *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1 (N.Y. App. Div. 2002), a Broadway theatre was forced to cancel numerous performances of a musical when the city closed off the block on which it was located after scaffolding attached to a nearby building collapsed. *Id.* at 2-3. Reversing the trial court's entry of summary judgment for the insured, the New York Appellate Division rejected the trial court's conclusion that "loss of" includes "loss of use" of property, holding that that "the plain meaning of the words 'direct' and 'physical' narrows the scope of coverage and mandates the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id.* at 7 (citations omitted).

Other courts have rejected similar business interruption claims based on loss of use. *See, e.g., Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where heavy snowstorm made insured premises inaccessible); *Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (rejecting insured's argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'"); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, 2007 WL 9775576, *5 (S.D. Miss. Nov. 19, 2007) (where insured was denied

access to computer data during power outage, there was no "direct physical loss of or damage to" property).[13]

Consistent with all of these prior decisions, a Michigan Circuit Court judge recently granted the equivalent of a motion to dismiss in a COVID-19 case, ruling from the bench that there were "no allegations of direct physical loss of or damage to . . . property" under the policy because that "has to be something with material existence," "[s]omething that is tangible," "that alters the physical integrity of the property." *Gavrildes Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30, tr. at 18-19 (Mich. Cir. Ct. July 1, 2020) (attached as Exhibit D hereto). The judge further stated that "it seems like the plaintiff is saying that the physical requirement is met because people were physically restricted from dine-in services [at the plaintiffs' restaurants]," "[b]ut, that argument is just simply nonsense [a]nd it comes nowhere close to meeting the requirement that . . . there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building." *Id.* at 20.

---

[13] Along the same lines, courts have repeatedly held that a defect in title to property which has the legal effect of depriving the insured of the property, is not a tangible, "physical loss," and therefore not covered by property insurance policies. *See Dae Assocs., LLC v. AXA Art Ins. Corp.*, 158 A.D.3d 493, 494 (N.Y. App. Div. 2018); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 527 N.E.2d 1179, 1180 (Mass. App. Ct. 1988); *Nevers v. Aetna Ins. Co.*, 546 P.2d 1240, 1241 (Wash. Ct. App. 1976); *Thane Hawkins Polar Chevrolet, Inc. v. Truck Ins. Exch.*, 1995 WL 70152, *2 (Minn. Ct. App. Feb. 21, 1995) (unpublished).

In *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002), the Third Circuit was called upon to decide whether, under the law of New York or New Jersey, the existence of asbestos-containing building materials in a building constituted "direct physical loss or damage" to property within the meaning of commercial property policies. The Third Circuit answered the question in the negative, affirming the district court's entry of summary judgment for the insurers. *Id.* at 236.  In so ruling, the court acknowledged that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure," and then stated:

> "[P]hysical loss or damage" occurs only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility. The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage.

*Id.* at 235. Because the summary judgment record revealed no evidence of actual contamination or an imminent threat of asbestos contamination in any of the insured buildings that made them uninhabitable, the court held that no "direct physical loss or damage" had occurred.  *Id.* at 236.

The New Jersey Appellate Division took a similar position in *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724 (N.J. Super. Ct. App. Div. 2009), in which supermarket operators sought to recover under a utility interruption

endorsement to their policy for food spoilage resulting from a power outage. The court concluded that there was "physical damage" within the meaning of the endorsement to an electrical grid when "*due to a physical incident or series of incidents*, the grid and its component generators and transmission lines were *physically incapable of performing their essential function of providing electricity*[.]" *Id.* at 734–35 (emphasis added). The court noted that "[w]e would reach a different result," i.e., the court would not find coverage, "if, for example, *a governmental agency had ordered* that the power be shut off to conserve electricity." *Id.* at 734 n.7 (emphasis added). The court also relied in part on a Colorado Supreme Court decision which noted that "[i]t is perhaps quite true that the so-called 'loss of use' of the [insured] premises, standing alone, does *not* in and of itself constitute a 'direct physical loss.'" *Id.* at 735 (emphasis added) (quoting *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, (Colo. 1968)). The *Wakefern* court rested its decision only on the special "Services Away Extension" endorsement to the policy at issue, which was purchased by supermarkets specifically to insure perishables against a power outage. The court strongly suggested that the base policy form would not provide such coverage, noting that "if the basic policy [insuring against 'direct physical loss to covered property'] covered this situation, it is difficult to perceive why the insured would have procured the Services Away Extension." *Id.* at 739.

Consistent with *Wakefern* and *Port Authority*, in *Gregory Packaging, Inc. v. Travelers Property Cas. Co. of America*, 2014 WL 6675934 (D.N.J. Nov. 25, 2014), this Court found that the "discharge" of ammonia gas into a food-processing facility "inflicted 'direct physical loss of or damage to' [the insured's] facility, as that phrase would be construed under New Jersey law by the New Jersey Supreme Court, because the ammonia *physically rendered the facility unusable for a period of time*." *Id.* at *6 (emphasis supplied).

Here, in contrast to *Wakefern* and *Gregory Packaging*, based on the facts alleged, Plaintiff's dental office and equipment therein were not *physically* impacted in any respect. Plaintiff's property was not "physically incapable of performing [its] essential function," *Wakefern*, 968 A.2d at 734, or "physically rendered . . . unusable for a period of time." *Gregory Packaging*, 2004 WL 6675934, at *6. Unlike in *Wakefern* or *Gregory Packaging*, based on what is alleged, *nothing* happened to Plaintiff's office or equipment therein. The only thing that needs to happen for Plaintiff's office to reopen for routine, non-urgent procedures is for government officials to lift the "social distancing" requirements. Plaintiff does not allege that Coronavirus was ever present in its dental offices, let alone that it contaminated any property to a point where the function or use of the office was eliminated (assuming that were even possible where the virus can be readily and quickly eliminated by cleaning or the mere passage of time). Thus, while the presence of Coronavirus

within a building would not constitute "direct physical loss of or damage to property," that simply is not even claimed in this case.

### 2. Plaintiff's Proposed Interpretation of the Policy is Contrary to Basic Rules of Insurance Policy Interpretation

In several respects, Plaintiff's position is contrary to the basic principle of New Jersey insurance law that courts must construe insurance policies to "give effect to the whole policy, not just one part of it." *Cypress Point Condo. Ass'n, Inc.*, 226 N.J. at 416, 143 A.3d at 280. *First*, when the Policy covers a Business Income or Extra Expense loss, the time period for such coverage is the "period of restoration," (Ex. A, at pp. 158-59), which generally ends on "[t]he date when the property at the described premises *should be repaired, rebuilt or replaced* with reasonable speed and similar quality," (*id.* at p. 193 (emphasis added)). Courts have repeatedly recognized that this definition contemplates that Business Income coverage requires a *physical* change to insured property that is capable of being remedied through repair or replacement. *See, e.g. Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage to the insured premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 ("The business interruption clause does not cover all business

interruption losses, but only those losses requiring repair, rebuilding or replacement."); *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1, 7-8 (N.Y. App. Div. 2002) (similar).

*Second*, the Policy, when read as a whole, makes clear that a bare loss of use unaccompanied by any physical loss or damage is not covered because the Policy contains an express exclusion stating that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market." (Ex. A, at p. 180). Construing the phrase "direct physical loss or damage" to encompass a loss of use unaccompanied by a physical alteration of insured property would nullify the "loss of use" exclusion altogether. *Princeton Women's Ctr. v. ProSelect Ins. Co.*, 2011 WL 4901310, *7 (D.N.J. Oct. 14, 2011) ("A logical interpretation of the instruction, like a logical interpretation of a statute or contract, is one that does not render language superfluous, or meaningless." [citing *Cumberland Cnty. Improvement Auth. v. GSP Recycling Co.*, 358 N.J. Super. 484, 497, 818 A.2d 431 (App.Div.), *cert. denied*, 177 N.J. 222, 827 A.2d 289 (2003)]); *Aetna Cas. & Sur. Co. v. Morton Int'l Inc.*, 1995 WL 865782, *2 (N.J. Super. Ct. Law Div. Aug. 7, 1995) (rejecting interpretation of personal injury liability endorsement "that would render the pollution exclusion clause applicable to bodily injury and property damage claims meaningless"); *see also Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*, 2006 WL 2850465, *1, *5-6 (D. Or. Sept. 29, 2006) (where well could not produce

anticipated volume of water and was determined to be unusable as a result of a damaged screen, court held that loss of use exclusion, among other exclusions, applied).[14]

Third, if, as Plaintiff maintains, the mere loss of use of its insured premises following a governmental order restricting their operations constituted "direct physical loss of or damage to property," the Civil Authority provision, which is a "Coverage Extension" that extends the scope of the Business Income and Extra Expense coverages, would serve no purpose. If Plaintiff's position were adopted, any action of civil authority that prohibits access to the insured premises within the meaning of the Civil Authority provision would constitute "direct physical loss of or damage to property at [the insured] premises," thereby triggering the Business Income and Extra Expense coverages. Thus, there would be no reason for the Policies to include the "Coverage Extension" for Civil Authority. Again, an insurance policy should not be construed in a manner that renders any of its provisions superfluous. *See Princeton Women's Ctr.* 2011 WL 4901310 at *7. In addition to all of the other reasons set forth above, Plaintiff's allegations that the Business Income and Extra Expense coverages apply to a governmental order

---

[14] Of course, when a covered cause of loss, such as a fire, results in physical loss of or damage to property and that causes a suspension of operations, the "loss of use" exclusion does not apply because the cause of the loss is the fire.

restricting the use of insured premises contravenes these basic principles of insurance policy interpretation and must be rejected.

### 3. Plaintiff's Alleged Losses Were Not Caused by a Covered Cause of Loss

Even if Plaintiff had alleged direct physical loss of or damage to property at the insured premises, there is no Business Income or Extra Expense coverage for the same reason that there is no Civil Authority coverage: Plaintiff has not alleged a Covered Cause of Loss. The virus exclusion expressly applies to Business Income and Extra Expense coverage. (Ex. A, at p. 312 ("The exclusion . . . applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority." [emphasis added])). The Complaint focuses heavily on the Coronavirus and alleges that Plaintiff's losses were "caused by COVID-19 and/or civil authority orders." (Compl., ¶ 74). For the same reasons set forth in Section IV.A.3 above, the virus exclusion applies to Plaintiff's claim for Business Income and Extra Expense coverage, just as it applies to the Civil Authority coverage.

To the extent that Plaintiff attempts to end-run the virus exclusion by alleging that its claimed losses under the Business Income and Extra Expense coverages stem from the Orders rather than the Coronavirus (*see, e.g.*, Compl., ¶¶ 29-30), in addition to the reasons set forth in Section IV.A.3 above, this argument also fails with respect to the Business Income and Extra Expense coverages because the Orders are a separately *excluded* cause of loss under the Acts or Decisions and Ordinance or Law

exclusions.[15] *First*, the Policy excludes "loss or damage caused by or resulting from . . . *[a]cts or decisions*, including the failure to act or decide, *of any* person, group, organization or *governmental body*." (Ex. A, at p. 182 (emphasis added)). Courts have held that similarly-worded Acts or Decisions exclusions are unambiguous and bar coverage for loss or damage caused by similar types of governmental orders. *See, e.g., Jernigan v. Nationwide Mut. Ins. Co.*, 2006 WL 463521, *10-11 (N.D. Cal. Feb. 27, 2006) (Acts or Decisions exclusion applied to loss caused by, among other acts or decisions, a town's "stop-work order"); *Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*, 774 N.Y.S.2d 710, 711 (N.Y. App. Div. 2004) (Acts or Decisions exclusion barred coverage where "the real losses claimed herein resulted from refusal by the authorities to permit resumption of operations"); *Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*, 2014 WL 1041831, *7 (S.D.N.Y. Mar. 18, 2014) (granting insurer's motion for partial summary judgment on Acts or Decisions exclusion where electric utility's decision to shut down power resulted in plaintiff's business income loss).

*Second*, the Policy's Ordinance or Law exclusion provides that "[w]e will not pay for loss or damage caused directly or indirectly by . . . *[t]he enforcement of any*

---

[15] The Acts or Decisions and Ordinance or Law exclusions do not preclude Civil Authority coverage when the specific prerequisites for that coverage are satisfied. As discussed above, Plaintiff has not and cannot allege the prerequisites for such coverage.

*ordinance or law . . . [r]egulating the* construction, *use* or repair of any property."
(Ex. A, at p. 178). As mentioned above, this exclusion "clearly and unambiguously
excludes coverage for losses caused directly or indirectly by the enforcement of any
ordinance or law regulating the . . . use . . . of any property" and "excludes coverage
for losses, including business income losses, caused by the enforcement of the law."
*Ira Stier*, 127 A.D.3d at 924 (holding that, where dental practice could not operate
for eleven months as a result of town's enforcement of ordinance requiring plaintiff
to obtain a certificate of occupancy, Ordinance or Law exclusion precluded coverage
for plaintiff's business income losses).

In summary, the Policy's Business Income and Extra Expense coverages
apply only where the Plaintiff's business operations are suspended due to "direct
physical loss of or damage to" property at insured premises caused by a Covered
Cause of Loss. Because the Complaint has not pled the existence of any direct
physical loss of or damage to property at Plaintiff's premises, let alone that such
physical loss of or damage to property is due to a Covered Cause of Loss, Plaintiff's
claims for declaratory relief and contract damages in relation to Business Income
and Extra Expense coverage fail as a matter of law and should be dismissed.

## V.    CONCLUSION

For all of the reasons stated above, Plaintiff has failed to state any claim upon
which relief may be granted. Thus, Travelers respectfully requests that the Court

dismiss the Complaint in its entirety and with prejudice under Federal Rule of Civil

Procedure 12(b)(6).

Respectfully submitted,

\_\_/s/*Liza M. Walsh*_____
Liza M. Walsh
William T. Walsh, Jr.
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, N.J. 07102
(973) 757-1100

Of Counsel:
Stephen E. Goldman (subject to *pro hac vice* admission)
Wystan M. Ackerman (subject to *pro hac vice* admission)
Denis J. O'Malley (subject to *pro hac vice* admission)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8200

*Attorneys for Defendant, Travelers Casualty Insurance Company of America*

Dated: August 6, 2020